# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Eric Fromhart, | | Civil Action No. |
| | Plaintiff, | |
| vs. | | |
| Julie Crozier, | | |
| | Defendant. | |

## PLAINTIFF'S COMPLAINT

Plaintiff Eric Fromhart files this Complaint for Breach of Contract, Anticipatory Breach of Contract, and Declaratory Judgment against Defendant Julie Crozier, stating as follows:

## INTRODUCTION

1.      Fromhart brings claims against Crozier for breach of contract and anticipatory breach of contract arising out of Crozier's nonpayment, and repudiation of a future payment, under the June 9, 2021 Membership Interest Purchase Agreement ("MIPA") entered into for Crozier's purchase of Fromhart's fifty percent (50%) membership interest in Secure340B, LLC ("Secure"), a Georgia limited liability company.

2.      A copy of the MIPA is attached as Exhibit A.

3.     Fromhart also brings a claim for declaratory judgment against Crozier under Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, and O.C.G.A. § 9-4-2 to determine and declare the contractual obligations of the parties under the MIPA.

## PARTIES

4.     Fromhart is a resident of Maine and is subject to the jurisdiction and venue of this Court.

5.     Upon information and belief, Crozier is a resident of Dallas, Texas and is subject to the jurisdiction and venue of this Court.

6.     Upon information and belief, Crozier may be served at 4028 McFarlin Blvd., Dallas, Texas 75205.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because there is complete diversity between Fromhart and Crozier, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     Venue is proper under Section 7.11 of the MIPA.

9.     Section 7.11 of the MIPA provides this Court personal jurisdiction over Crozier.

10.     Section 7.11 of the MIPA provides:

"The parties hereby irrevocably and unconditionally submit to the jurisdiction of the state courts of Georgia and to the jurisdiction of the U.S. District Court for the Northern District of Georgia for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement."

(Ex. A § 7.11.)

## FACTS

11.     Secure provides consulting services to pharmacies related to the 340B Drug Pricing Program, which include contract review and negotiation support, operational reviews and improvement work, and ongoing business guidance.

12.     The 340B Drug Pricing Program is a federal program that requires drug manufacturers to provide outpatient drugs to covered entities at reduced prices to help covered entities stretch scarce federal resources as far as possible.

13.     Fromhart and Amanda Gaddy cofounded Secure.

14.     Fromhart and Gaddy executed the Operating Agreement of Secure340B, LLC ("Operating Agreement") on March 17, 2016.

15.     A copy of the Operating Agreement is attached as Exhibit B.

16.     Under the Operating Agreement, Fromhart and Gaddy each had a 50% membership interest in Secure.

17.     Before the sale of his membership interest to Crozier, Fromhart and Gaddy jointly served as Managers of Secure.

3

18.     In April 2021, Gaddy proposed to Fromhart that he sell his membership interest in Secure to Crozier.

19.     It was not Fromhart's idea to sell his membership interest in Secure to Crozier.

20.     Fromhart had no plan to sell his membership interest in Secure before Gaddy proposed that he sell his interest to Crozier.

21.     On June 9, 2021, Fromhart and Crozier entered into the MIPA.

22.     The MIPA provided for Crozier's purchase of Fromhart's fifty percent (50%) membership interest in Secure for an aggregate purchase price of $1,250,000.00. (Ex. A, RECITALS.)

23.     Under Section 1.1(b) of the MIPA, Crozier agreed to pay a first installment of the $1,250,000.00 purchase price by paying $400,000.00 to Fromhart at closing.

24.     Crozier paid the first installment of $400,000 at closing.

25.     Under Section 1.1(c) of the MIPA, Crozier agreed to pay a second installment of $450,000.00 on the first business day following the first anniversary of the closing date.

26.     The first business day following the first anniversary of the closing date was June 10, 2022.

27.     Crozier did not pay the second installment of $450,000.00 by June 10, 2022.

28.     Under Section 1.1(c) of the MIPA, Crozier is to pay a third installment of $400,000.00 on the first business day following the second anniversary of the closing date.

29.     The first business day following the second anniversary of the closing date is June 12, 2023.

30.     Crozier has represented she does not plan to pay the third installment of $400,000.00 on June 12, 2023.

31.     Gaddy and Fromhart executed a Consolidated Certificate of Resolution and Waiver of Rights permitting Fromhart's transfer of his membership interest in Secure to Crozier.

32.     A copy of the Consolidated Certificate of Resolution and Waiver of Rights is attached as Exhibit C.

33.     On June 9, 2021, Crozier executed a Joinder Agreement, in which she agreed to become a party to the Operating Agreement.

34.     A copy of the Joinder Agreement is attached as Exhibit D.

35.     On the sale of Fromhart's membership interest to Crozier, Crozier became a substitute member of Secure.

36.     On the sale of Fromhart's membership interest to Crozier, Fromhart no longer was a member of Secure.

37.     Fromhart ceased to be a member of Secure on June 9, 2021.

38.     On information and belief, Julie Crozier and Amanda Gaddy are currently the only members of Secure.

39.     After the sale of his membership interest in Secure, Fromhart began working full-time for Aventi Health, LLC ("Aventi").

40.     Aventi provides 340B Drug Pricing Program related software solutions to covered entities as their third-party administrator.

41.     Aventi and Secure are not competitors.

42.     On April 18, 2022, Fromhart received a letter from counsel for Secure about purported claims by Secure and Crozier against and affecting Fromhart and Aventi ("Secure Demand").

43.     A copy of the Secure Demand is attached as Exhibit E.

44.     The Secure Demand accuses Fromhart of purportedly breaching fiduciary duties he owed to Secure and of allegedly converting a proprietary modeling and evaluation tool owned by Secure.

45.     Fromhart denies the accusations in the Secure Demand.

46.     On May 26, 2022, counsel for Crozier sent Fromhart an Indemnification Claim Notice ("Notice").

47.     A copy of the Notice is attached as Exhibit F.

48.     Crozier's Notice incorporates the Secure Demand by reference.

49.     In the Notice, Crozier claims losses for which she alleges she is entitled to indemnification under Sections 6.2(a) and 6.2(c) of the MIPA. (Ex. F.)

50.     Crozier contends that Secure incurred losses arising out of Fromhart's purported "pre-closing breaches of his obligations under the Operating Agreement." (Ex. F.)

51.     Crozier also contends that she, "as a member of" Secure, also incurred losses arising out of Fromhart's purported "pre-closing breaches of his obligations under the Operating Agreement." (Ex. F.)

52.     Crozier also contends that she and Secure have incurred substantial losses arising out of Fromhart's supposed failure to identify a purported "tool" belonging to Secure, as required by Section 2.10 of the MIPA. (Ex. F.)

53.     Crozier demands indemnification from Fromhart under Section 6.2(a) and (c) of the MIPA for her and Secure's losses.

54.     Crozier's Notice "demands payment of such Losses from [Fromhart]," which she estimates to exceed $850,000.00. (Ex. F.)

55.   $850,000.00 is the amount Crozier owes under the MIPA.

56.   Fromhart breached no obligations under the Operating Agreement before closing on the MIPA and has engaged in no wrongful conduct before or since.

57.   Fromhart solicited none of Secure's business opportunities away from Secure while he was a co-Manager of Secure.

58.   Fromhart breached no fiduciary duty owed to Secure.

59.   Secure does not own a proprietary modeling and evaluation tool.

60.   Fromhart did not fail to inform Crozier of a proprietary modeling and evaluation tool that belonged to Secure.

61.   Secure has not suffered loss because of any action by Fromhart.

62.   Crozier has not suffered loss because of any action by Fromhart.

63.   Crozier can prove no loss that she has sustained that would allow her to avoid her payment obligations under the MIPA.

64.   Crozier cannot establish any liability of Fromhart under Section 6.3(c) of the MIPA.

65.   Instead, Crozier suffers from buyer's remorse and now claims that she has lost the exact amount she still owes.

66.    Crozier's notice also purports to provide Fromhart notice "that, pending [Crozier's] receipt of such payment, all such Losses shall be offset against the Deferred Purchase Price." (Ex. F.)

67.    Thus, Crozier did not pay her second installment of the aggregate purchase price and has represented she will not pay her third installment of the aggregate purchase price when it becomes due.

68.    Thus, Crozier has represented she will not pay her second and third installments of the aggregate purchase price when those payments become due.

69.    Fromhart denies Crozier's allegations regarding any purported pre-closing breaches of his obligations under the Operating Agreement and failure to disclose Secure's purported tool under Section 2.10 of the MIPA.

70.    Crozier is therefore not entitled to indemnification from Fromhart.

71.    The facts alleged show that a substantial and concrete controversy exists between exists between Fromhart and Crozier, parties having adverse legal interests, regarding whether Fromhart committed pre-closing breaches of his obligations under the Operating Agreement and failed to disclose Secure's purported tool to Crozier under Section 2.10 of the MIPA, and must therefore indemnify Crozier under the MIPA.

72.    Crozier demands payment for losses she claims have been incurred, and did not pay the installment due on June 10, 2022 under the MIPA. Thus, this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## COUNT 1 – BREACH OF CONTRACT

73.    Fromhart re-alleges and incorporates by reference the allegations of Paragraphs 1 through 72 above as though fully set forth herein.

74.    On June 9, 2021, Fromhart and Crozier entered into the MIPA. *See* Ex. A.

75.    The MIPA is a valid, enforceable written contract between Fromhart and Crozier.

76.    The MIPA provided for Crozier's purchase of Fromhart's fifty percent (50%) membership interest in Secure for an aggregate purchase price of $1,250,000.00.

77.    Under Section 1.1(b) of the MIPA, Crozier paid $400,000.00 of the $1,250,000.00 purchase price to Fromhart at closing.

78.    Under Section 1.1(c) of the MIPA, Crozier's second installment payment to Fromhart in the amount of $450,000.00 was due on June 10, 2022.

79.    Crozier did not pay the second installment payment by June 10, 2022.

80.     Therefore, Crozier breached the MIPA.

81.     Fromhart performed and is still performing all of his required obligations under the MIPA.

82.     Because of Crozier's breach of the MIPA, Fromhart has suffered damages of $450,000.00, plus prejudgment and post-judgment interest, costs and expenses, and attorneys' fees.

## **COUNT 2 – ANTICIPATORY BREACH OF CONTRACT**

83.     Fromhart re-alleges and incorporates by reference the allegations of Paragraphs 1 through 82 above as though fully set forth herein.

84.     On June 9, 2021, Fromhart and Crozier entered into the MIPA. *See* Ex. A.

85.     The MIPA is a valid, enforceable written contract between Fromhart and Crozier.

86.     The MIPA provided for Crozier's purchase of Fromhart's fifty percent (50%) membership interest in Secure for an aggregate purchase price of $1,250,000.00.

87.     Under Section 1.1(b) of the MIPA, Crozier paid $400,000.00 of the $1,250,000.00 purchase price to Fromhart at closing.

88.    Under Section 1.1(c) of the MIPA, Crozier's second installment payment to Fromhart in the amount of $450,000.00 was due on June 10, 2022.

89.    Under Section 1.1(c) of the MIPA, Crozier's third installment payment to Fromhart in the amount of $400,000.00 is due on June 12, 2023.

90.    Crozier did not pay the second installment payment by the due date and informed Fromhart that she does not plan to pay the third installment payment when due.

91.    Crozier therefore does not intend to fulfil her obligations under the MIPA and has repudiated the MIPA prior to the time for performance.

92.    Fromhart performed and is still performing all of his required obligations under the MIPA.

93.    In addition to the $450,000.00 in damages Fromhart has incurred as a result of Crozier's breach of the MIPA, because of Crozier's anticipatory breach of the MIPA, Fromhart has suffered damages of $400,000.00, plus prejudgment and post-judgment interest, costs and expenses, and attorneys' fees.

## COUNT 3 – DECLARATORY JUDGMENT

94.    Fromhart re-alleges and incorporates by reference the allegations of Paragraphs 1 through 93 above as though fully set forth herein.

95.     There is now a real and substantial controversy between Fromhart and Crozier, having adverse legal interests of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment regarding Crozier's demand for indemnification under the MIPA.

96.     This matter is ripe for declaratory judgment, and a prompt adjudication of the parties' rights and obligations regarding Fromhart's indemnity obligations to Crozier would be of practical utility to the parties.

97.     The MIPA is a valid, enforceable written contract between Fromhart and Crozier.

98.     Crozier contends that she has incurred losses arising out of Fromhart's alleged pre-closing breaches of his obligations under the Operating Agreement.

99.     Crozier also contends that she has incurred substantial losses arising out of Fromhart's alleged failure to identify Secure's purported tool as required by Section 2.10 of the MIPA.

100.    Crozier demands payment from Fromhart under Section 6.2(c) of the MIPA for her losses.

101.    Crozier estimates the losses to exceed $850,000.00, the exact amount she contractually owes Fromhart.

102.   Fromhart disputes, however, that he breached his obligations to Secure under the Operating Agreement and disputes that he breached Section 2.1 of the MIPA by failing to disclose to Crozier a proprietary modeling and evaluation tool owned by Secure.

103.   Fromhart does not have to indemnify Crozier under Section 6.2 of the MIPA.

104.   A substantial justiciable controversy therefore exists about Fromhart's obligations to Crozier, and vice versa, under the MIPA.

105.   Fromhart seeks a judgment declaring that Fromhart does not have to indemnify Crozier under Section 6.2 of the MIPA because:

(a) Fromhart did breach the Operating Agreement and cause Crozier to incur a loss; and

(b) Fromhart did not breach Section 2.10 of the MIPA by failing to disclose a proprietary modeling and evaluation tool owned by Secure and cause Crozier to incur a loss.

## JURY DEMAND

Fromhart demands a trial of all issues by jury.

WHEREFORE, Fromhart prays for the following relief:

a.   A judgment awarding Fromhart compensatory damages as a result of Crozier's breach of the MIPA, together with interest and costs for damages for which an adequate remedy at law exists;

b.   A judgment awarding Fromhart compensatory damages as a result of Crozier's anticipatory breach of the MIPA, together with interest and costs for damages for which an adequate remedy at law exists;

c.   A declaratory judgment that Crozier is not entitled to indemnification from Fromhart for her and Secure's purported losses;

d.   Pre-judgment and post-judgment interest allowed by law;

e.   Expenses, costs, and all attorneys' fees awardable under O.C.G.A. § 13-6-11 and the parties' contract; and

f.   Such other and further relief as the Court deems just and proper.

Dated this 13th day of June, 2022.

Respectfully submitted,

By: */s/ S. Wade Malone*
S. Wade Malone
Georgia Bar No. 468015
Lucas A. Westby
Georgia Bar No. 594008
W. Carroll B. Hart
Georgia Bar No. 987718
NELSON MULLINS RILEY &
SCARBOROUGH LLP
Atlantic Station / 201 17th Street, NW /

Suite 1700
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (facsimile)
E-Mail: wade.malone@nelsonmullins.com
E-Mail: lucas.westby@nelsonmullins.com
E-Mail: carroll.hart@nelsonmullins.com